## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| **Anuradha Naidu-McCown, and Uduak Akan-Etuk on behalf of themselves and others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO.** <u>3:23cv390</u> |
| **Emergency Coverage Corporation d/b/a TeamHealth** | |
| **Defendant.** | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Anuradha Naidu-McCown and Uduak Akan-Etuk, as representative plaintiffs for themselves and on behalf of a class of all others similarly situated pursuant to Rule 23, respectfully move for judgment against Emergency Coverage Corp d/b/a TeamHealth ("Defendant"), as follows:

### Introduction

1.    This is a claim for the unlawful misclassification of physicians as "independent contractors" instead of employees in violation of Va. Code § 40.1-28.7:7 (Count I) and on behalf of emergency physicians for unpaid wages in violation of Va. Code § 40.1-29 (Count II). Plaintiffs bring this matter as a class action pursuant to Rule 23 on behalf of themselves and others similarly situated current or former physicians and in the second count specifically on behalf of all current and former similarly situated emergency physicians employed by Defendant

1

in the Commonwealth of Virginia.

2.      With respect to Count I, TeamHealth is liable to Plaintiffs, and other similarly situated physicians, for unlawfully misclassifying them as independent contractors instead of employees, in violation of Code of Virginia § 40.1-28.7:7. TeamHealth, and/or its hospital clients, exercise control over Plaintiff physicians such that Plaintiffs are truly employees under the applicable legal standard, despite the contract document, written by TeamHealth, which claims that Plaintiffs are independent contractors. TeamHealth has great financial incentive to misclassify all of its Virginia physicians because it avoids paying the employer's share of taxes (federal and state), and fringe benefits (health insurance, retirement benefits, etc.) associated with the proper, legal employment of Plaintiffs and all others similarly situated. Since July 1, 2020, Plaintiffs are entitled to monetary damages as a result of TeamHealth's misclassification of their employment status.

3.      With respect to Count II, TeamHealth purports to have an independent contractor relationship with Plaintiffs, and other similarly situated emergency room physicians, and pays them an agreed hourly rate. However, TeamHealth does not pay emergency physicians for all hours worked. Plaintiffs, and other similarly situated physicians, routinely worked unpaid hours for TeamHealth in Virginia performing non-patient facing tasks. TeamHealth did not pay Plaintiffs, and other similarly situated physicians for hours of work required to complete necessary patient charts and forms when such work occurred beyond their scheduled time. Since July 1, 2020, TeamHealth is liable to Plaintiffs for unpaid wages, liquidated damages, attorneys' fees, and treble damages for knowingly violating Code of Virginia § 40.1-29.

2

Jurisdiction and Venue

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000 and there exists diversity amongst the parties.

5.      Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to Plaintiffs' claims have taken place in the Eastern District of Virginia.

6.      Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

Parties

7.      Plaintiff Anuradha Naidu-McCown ("Dr. Naidu-McCown") is a resident of Virginia who was employed by Defendant as an Emergency Physician in the Emergency Department of Defendant's clients' hospital, Chippenham Hospital in Richmond, Virginia.

8.      Plaintiff Uduak Akan-Etuk ("Dr. Akan-Etuk") is a resident of Virginia who was employed by Defendant as an Emergency Physician in the Emergency Department of Defendant's clients' hospital, John Randolph Medical Center in Hopewell, Virginia and TriCities Emergency Center in Prince George, Virginia.

9.      Defendant Emergency Coverage Corporation d/b/a TeamHealth ("TeamHealth") is a Tennessee corporation, with a principal place of business of Knoxville, Tennessee. TeamHealth is in the business of providing trained Emergency Room physicians, like the Plaintiffs, to staff the emergency rooms belonging to its client hospitals, a number of which are located in Virginia.

Factual Allegations

10.     Dr. Naidu-McCown began working as a pediatric emergency room ("ER")

3

physician at Chippenham Johnston/Willis Hospital in or about December 2015 through a predecessor entity or contractor before TeamHealth took over the ER contract in or about December of 2018 until her separation from TeamHealth on or about October 6, 2021. (Note: Chippenham and many other hospitals refer to their ER's as ED's, or "Emergency Department," but for purposes of this complaint, the term "ER" is used).

11.    Dr. Akan-Etuk began working as an ER physician at John Randolph Medical Center and Tri-Cities Emergency Center on or about November 2, 2006, through a predecessor entity or contractor before TeamHealth took over the ER contract in or about December of 2018. Dr. Akan-Etuk's employment with TeamHealth ended on or about August 5, 2021.

12.    Defendant misclassified Plaintiffs, and other physicians and emergency physicians as "independent contractors" despite the reality that Defendant, along with its hospital clients, controlled the working conditions of Plaintiffs to render them legally employees of Defendant.

13.    Plaintiffs were made to sign a "Medical Professional Independent Contractor Agreement" with TeamHealth, (hereinafter "MPICA"), the terms of which were boilerplate save primarily for differentiation in salary, the types of medicine being practiced, and the facilities being staffed.

14.    The MPICA was a contract of adhesion in that once an hourly rate of pay was agreed, the Plaintiffs were offered the MPICA on a take it or leave it basis, without an opportunity to bargain for other terms, all of which were drafted by Defendant.

15.    A copy of Dr. Naidu-McCown's MPICA contract is attached hereto as **Exhibit 1**. Dr. Naidu-McCown's "First Amended Addendum 1" is attached hereto as **Exhibit 2**.

16.     A copy of Dr. Akan-Etuk's MPICA contract is attached hereto as **Exhibit 3**.

17.     In order to leave TeamHealth's employ, Plaintiffs had to provide 90 days-notice, otherwise they would be responsible for the cost absorbed by TeamHealth in hiring and paying their successor until the conclusion of their 90-day notice period.

18.     TeamHealth maintained the right to end Plaintiffs' employment immediately with cause, and in the event, it desired to terminate Plaintiffs without cause, TeamHealth purported to give 90-days' notice, but also held a unilateral right to decide whether the Plaintiffs would continue to work any scheduled shifts during the notice period or be scheduled for any additional shifts during the notice period.

19.     For the duration of her employment with TeamHealth, Dr. Naidu-McCown was staffed to Chippenham hospital where she was required to, and regularly worked a minimum of 15 shifts per month, or 120 hours a month, in the ER.

20.     Dr. Naidu-McCown believes she worked as many as 20shifts per month for TeamHealth and HCA at Chippenham hospital during the COVID-19 pandemic.

21.     The corporate entity that owns Chippenham Hospital is HCA Healthcare (hereinafter "HCA").

22.     For the duration of his employment with TeamHealth, Dr. Akan-Etuk was assigned to John Randolph Medical Center ("JRMC") where he was required to, and regularly worked a minimum of 10 to 15 shifts per month, at JRMC's ER. Dr. Akan-Etuk also may have worked a few shifts as an ER physician at Tri-Cities Emergency Center ("TCEC").

23.     The corporate entity that owns JRMC and TCEC is HCA.

24.     TeamHealth, by contract with HCA, provides ER physicians for numerous HCA-

owned hospitals throughout Virginia.

25.    Plaintiffs' duties were to serve as physicians for TeamHealth and its medical facility clients, including HCA hospitals.  Specifically, with respect to Drs. Naidu-McCown and Akan-Etuk, this meant diagnosing, treating, and admitting patients (pediatric patients in the case of Dr. Naidu-McCown) in and through the HCA facilities' emergency rooms.

26.    Plaintiffs rendered medical services, but had no control over, or role in determining the pricing for such services and understood that such services were priced, discounted, and charged according to agreement between some combination of TeamHealth clients (e.g. HCA and other medical facilities), insurers, TeamHealth, and private payors.

27.    Defendant provided Plaintiffs with Medical Malpractice coverage.

28.    Plaintiffs conducted their work in the client facilities such as emergency rooms using equipment belonging to the facilities and assisted by staff provided by the facilities and/or TeamHealth.

29.    Plaintiffs were required by Defendant to submit various billing documents within the timeframe specified by Defendant, or else face a reduction or offset to their pay from Defendant.

30.    Plaintiffs were further required by Defendant, and for Drs. Naidu-McCown and Akan-Etuk, by HCA, to complete all client required medical documentation and/or medical charting within a specified timeframe following treatment, or else face a reduction or offset to their pay from Defendant.

31.    Upon information and belief, HCA could not receive payment for the services provided by Plaintiffs until and unless Plaintiffs completed all of the HCA-required medical

documentation or charting of all of the medical treatment provided.

32.    Medical charting is labor intensive endeavor that involves the reduction of patient treatment into a summary written form.  Medical charting was required by Defendant, and its client, for each patient seen by the Plaintiffs.

33.    In order for Drs. Naidu-McCown and Akan-Etuk, and similarly situated emergency physicians, to complete the HCA-required medical documentation or charting, they were given unique login access to HCA's electronic medical records ("EMR") system.

34.    Plaintiffs, and similarly situated ER physicians, were regularly logged-in and entering charting data on HCA's EMR systems after the end of their ER shifts, and on days off from work, in connection with their ER duties.

35.    Per their MPICA contracts, TeamHealth required that Plaintiffs provide services "consistent with the applicable…rules…and requests of Facilities[1]…and the agreement(s) between Company or its affiliate and Facilities." *See* MPICA at ¶ 1 (Exhibits 1 and 3).

36.    Per ¶ 5 of their MPICA contracts state that, in consideration for the "Services"[2] provided by Plaintiffs, each "shall be paid the amounts stated in Addendum '1'." *Id*. at ¶ 5.

37.    Per Addenda 1 of their contracts, Plaintiffs were to be paid a flat hourly rate "for the number of hours or shifts" for which they provided "Services" . *See* MPICA at Addendum 1 (Exhibits 1 and 3) and First Amended Addendum 1 (Exhibit 2).

38.    Dr. Naidu-McCown's hourly rate was $180 per hour for her services during non-night shifts, and $185 per hour during night shifts. *See* MPICA Addendum 1 (Exhibit 1) and First

---

[1] HCA is a "Facility" as defined in the MPICA.
[2] "Services" is defined in the MPICA as "professional medical services". See MPICA at ¶ 1.

Amended Addendum 1 (Exhibit 2).

39.     Dr. Akan-Etuk's hourly rate was between $210 and $230 per hour for his services depending on which facility (JRMC or TCEC) and which shift (night or non-night) he worked. *See* Akan-Etuk's MPICA at Addendum 1 (Exhibit 3).

40.     TeamHealth required Naidu-McCown and Akan-Etuk to work a minimum of 150 hours per month. *See* Naidu-McCown's First Amended Addendum 1 (Exhibit 2), and Akan-Etuk's Addendum 1 (Exhibit 3).

41.     During the relevant time, TeamHealth and HCA determined that ER physicians would work in increments of 8-to-12-hour shifts. In order to maintain 24-hour staffing of the ER, TeamHealth and HCA established three shifts of ER physicians seven days per week.

42.     During the relevant time, TeamHealth and HCA determined the length of the work shifts and the scheduling of the ER physicians. For example, Defendant set 8-hour shifts for the ER physicians working at Chippenham Hospital during the weekdays and, for a time, 12-hour shifts on the weekends. Defendant set 10-hour shifts for the ER physicians working at JRMC.

43.     The ER physicians did not determine how to staff the ERs or the length of shifts at the ER's where they worked. The Defendant and their hospital clients determined the number of physicians staffing the ER at any given time, who those physicians were, and the length of their shift.

44.     In order for Plaintiffs to perform their ER duties involving patient service, they were routinely unable to complete all medical charting duties within their scheduled shifts.

45.     Plaintiffs' primary duty during their scheduled ER shifts (whether 8 or 10 or 12-

8

hour shifts) was to treat patients admitted into the ER during the entirety of such scheduled shift.

46.    On several occasions, Plaintiffs would stay beyond their scheduled shifts to treat patients, Plaintiffs were not compensated for this time.

47.    Due to the Defendant's scheduling of ER physicians, there was an inadequate amount of time during the 8 or 10 or 12-hour shift to treat patients and perform the necessary medical services in connection with treating such patients, including charting, billing, coding and/or related documentation.

48.    As a result, after the end of each scheduled shift worked, or before the start of their next shift, or on their days off, Plaintiffs logged in to HCA's EMR system to conduct charting, billing, and/or documentation required by Defendant, but Defendant did not pay for any such time beyond their scheduled ER shift.

49.    Defendant was aware that Plaintiffs, and similarly situated ER physicians, worked unpaid hours performing medical services relating to charting and billing, and knowingly failed to compensate them for extra hours necessary to perform such non-patient-facing services.

50.    Defendant and HCA required Plaintiffs, and similarly situated ER physicians, to perform such medical charting and billing duties, which were done for the benefit of the patients, TeamHealth and HCA.

### Common Allegations

51.    Defendant employs physicians, like the Plaintiffs, to staff the various departments and positions at multiple hospitals throughout the Commonwealth of Virginia, including ER's, Acute Care, Critical Care, Hospitalists, Anesthesia, OB/GYN, Surgery, Virtual Care (Telehealth), Medical Directors, and other services.

52.    TeamHealth claims on its website that it was "established by emergency physicians" and is currently "one of the largest integrated care providers in the country." Source: https://www.teamhealth.com/our-company/ (last visited June 8, 2023).

53.    TeamHealth claims to be "the leading physician practice in the U.S." Source: https://www.teamhealth.com/wp-content/uploads/2019/01/PPE_Web_010819.png (last visited June 8, 2023).

54.    TeamHealth claims to provide its physicians with "full-time administrative support, clinical support, risk management resources, education, leadership training, advancement opportunities, flexible scheduling options, and relief from the worries of running a private practice." Source: https://www.teamhealth.com/what-we-do/physicians/?r=1 (last visited June 8, 2023).

55.    TeamHealth states "physicians are at the heart of TeamHealth—the culture, the community, the company as a whole. Here, you have the opportunity to be a part of something large, connected, and truly impactful." Source: *Id*.

56.    All TeamHealth physicians working in Virginia sign identical or near identical contracts which purport to classify them as independent contractors.

57.    Plaintiffs seek to represent classes of similarly situated individuals, *i.e.*, (1) all TeamHealth physicians staffed to work in a Virginia facility since July 1, 2020, who were (mis)classified as independent contractors, and (2) all TeamHealth emergency physicians staffed to work in a Virginia emergency facility who were not paid their hourly rate for all hours worked.

58.    Per their contracts, Plaintiffs, and those similarly situated, were to be paid an

10

hourly rate for each hour of services provided.

59.     TeamHealth did not pay the Plaintiffs and those similarly situated ER physicians, for services performed beyond their scheduled shifts when such extra time worked was spent on non-patient-facing duties such as medical records charting and billing.

60.     Plaintiffs, and those similarly situated regularly did not have time to complete charting, billing, and other required paperwork during busy ER shifts, and completing such services required them to work beyond their pre-determined shifts or to complete such work at home, or prior to their next scheduled shifts. Plaintiffs were not paid for such services for which they were required to perform.

61.     The services for which Plaintiffs and similarly situated physicians were not paid, were professional medical services (or "Services") as contemplated by the MPICA for which TeamHealth was supposed to compensate the physicians at their rate of pay.

62.     Though classified and treated as independent contractors, Plaintiffs, and those similarly situated were actually TeamHealth employees.

63.     Plaintiffs, and those similarly situated, work(ed) for TeamHealth exclusively or near exclusively, at the emergency or other client departments set out in their contracts, and Defendant did not assign its emergency physicians or physicians to hospitals or facilities other than as set out in each physician's individual contract.

64.     The duties of Plaintiffs and those similarly situated were to serve as physicians at TeamHealth's clients' facilities. Specifically, they were required to diagnose and treat patients admitted in and through their assigned facilities.

65.     Plaintiffs, and those similarly situated rendered emergency and/or non-emergency

11

medical services, but had no control over, or role in determining the pricing for such services, nor did they accrue additional benefit from the volume, quality, or magnitude of those services. Rather, Plaintiff, and those similarly situated were paid a flat hourly rate (other than as alleged herein) and the services they performed were priced, discounted, charged, and paid for according to agreement between some combination of the client (i.e. a medical facility), insurers, TeamHealth, and private payors.

66.     Defendant provided Plaintiffs, and those similarly situated with Medical Malpractice coverage for services performed while in the employ of TeamHealth.

67.     Plaintiffs, and those similarly situated, did not invest in the ER facilities or client facilities at which they worked, nor did they purchase the equipment used at the ERs or at client medical facilities.

68.     Plaintiffs, and those similarly situated, were not subject to profits or losses dependent on the admissions or profitability of the facilities where he/she worked for Defendant.

69.     Plaintiffs, and those similarly situated were paid on a monthly basis.

70.     In order to leave TeamHealth's employ, Plaintiffs, and those similarly situated, had to provide 90 days-notice, otherwise they would be responsible for the cost absorbed by TeamHealth in hiring and paying their successors until the conclusion of their 90-day notice period.

71.     Plaintiffs, and those similarly situated, conducted their work in TeamHealth client facilities and emergency departments using equipment belonging to the facilities and they were assisted by nurses and staff employed by the facilities and/or TeamHealth.

72.     Plaintiffs, and those similarly situated were required by Defendant to complete

12

and submit various billing and medical documentation, and/or medical charting documentation within a timeframe specified by TeamHealth and/or its client hospitals.

73.    Plaintiffs, and those similarly situated were required by Defendant and its hospital clients to use each hospital client's EMR system to complete various documents including billing, patient, and medical charting.

74.    Medical charting was required by Defendant, and its hospital clients, for each patient seen by the Plaintiffs, and those similarly situated.

75.    TeamHealth maintained the right to immediately end the employment of Plaintiffs, and those similarly situated, with cause, and in the event it desired to terminate Plaintiffs, or those similarly situated without cause, TeamHealth purported to give 90-days' notice, but also held a unilateral right to decide whether the Plaintiffs, and those similarly situated would continue to work any scheduled shifts during the notice period or be scheduled for any additional shifts during the notice period.

76.    Defendant and its clients set the shift-work hours, and instructed Plaintiffs, and those similarly situated, as to when and how long their shifts would be at each facility and ER.

77.    Defendant and its clients set professional requirements and subjected Plaintiffs, and those similarly situated, to professional peer review processes at most or all client facilities.

78.    Defendant and its clients set various metrics requirements, including customer/patient surveys, and subjected Plaintiffs, and those similarly situated, to discipline or termination if the physician failed to meet certain metrics goals.

79.    Plaintiffs, and those similarly situated, rendered personal services to the patients admitted by Defendants' clients' facilities, and the physicians did not have the ability to hire or

subcontract other physicians to perform such services.

80.    Plaintiffs, and those similarly situated, did not hire or supervise nurses or physician's assistants ("PA's") at the facilities. All such nursing staff, including nurse practitioners ("NP's") and PA's, were provided by the Defendant and/or by each of Defendant's clients.

81.    Plaintiffs, and those similarly situated, typically had a continuing and long-term working relationship with TeamHealth and with each ER or medical facility to which the doctor was assigned .

82.    Plaintiffs, and those similarly situated were required by TeamHealth to attend and complete TeamHealth training modules, sometimes referred to as "bootcamp" that included medical case presentations followed by questions relating to medical management. Plaintiffs, and those similarly situated were also required to take TeamHealth classes on professionalism and sexual harassment called "minefield navigators."

83.    Plaintiffs, and those similarly situated, were all subject to the same terms and conditions of employment as well as payroll practices and policies of Defendant.

84.    Plaintiffs, and those similarly situated ER physicians, were not paid the wages owed to them in violation of Code of Virginia, § 40.1-29.  Specifically, Plaintiffs, and those similarly situated ER physicians, were not paid wages for hours worked performing non-patient-facing professional medical services (which they were required to perform) before or after their scheduled shift.

85.    Defendant and its ER clients had actual or constructive knowledge that the ER physicians' duties responding and attending to patients precluded Plaintiffs from performing

their medical, billing, and charting duties within their scheduled 8- or 10-hour shifts, and that in order to complete such charting duties they were required to spend time after the end of their shift and/or on days off performing such duties without compensation.

86.    Plaintiffs file a claim for unpaid wages on behalf of themselves an all other similarly situated employees of Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure for violations of Code of Virginia § 40.1-29.

87.    Defendant and its healthcare facility clients had actual or constructive knowledge that the Plaintiffs, and those similarly situated physicians, were improperly misclassified as independent contractors in violation of Code of Virginia § 40.1-28.7:7, causing them damages in the form of lost wages, salary, employment benefits, expenses incurred that would have otherwise been covered by insurance, and/or other expenses that would not have been incurred had Defendant properly classified them as employees.

88.    Plaintiffs file a claim for misclassification on behalf of themselves an all other similarly situated employees of Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure for violations of Code of Virginia §40.1-28.7:7.

### Class Action Allegations (Misclassification Subclass)

**A.    Class Definition for the Misclassification Subclass**

89.    Plaintiffs, the Rule 23 Misclassification Class Representatives, seek to maintain claims pursuant to Va. Code § 40.1-28.7:7, individually, and on behalf of the following class:

> **All current and former TeamHealth physicians who were classified as independent contractors and were assigned to one of TeamHealth's clients' facilities within Virginia at any time since July 1, 2020.**

90.    The above-defined class definition and its putative class members are hereinafter

referred to as the "Misclassification Subclass" and the Plaintiffs as class representatives for this subclass are referred to as the "Misclassification Class Representatives."

91.    Plaintiffs and the Misclassification Subclass all were made to assent to essentially identical agreements, subject the same [mis]classification as independent contractors, and the same TeamHealth work requirements and policies.

### B.    Efficiency of Class Prosecution of Common Claims

92.    Certification of a class of current and former TeamHealth Physicians is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Misclassification Class Representatives and the proposed class. Conversely, proceeding on an individual basis will require the filing of potentially scores of duplicative individual suits which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

### C.    Numerosity and Impracticality of Joinder

93.    The class which the Misclassification Class Representatives seeks to represent are so numerous that joinder is impracticable. On information and belief, the Misclassification Subclass is believed to number over 100 current and former physicians who have been misclassified by TeamHealth as independent contractors and been assigned to work at Virginia medical facilities.

### D.    Common Questions of Law and Fact

94.    The propriety of Defendant's classification of its physicians as independent contractors and the Defendant's pay and human resources practices with regard to same, present common issues of fact in this matter.  Moreover, because Plaintiffs and the Misclassification

Subclass are all made to sign nearly identical boilerplate contracts and addenda, the pay and classification practices at issue apply uniformly and present identical questions of law and fact with respect to the Misclassification Class Representatives and those whom they seek to represent.

95.     Pursuant to §40.1-28.7:7(B), Plaintiffs, and those similarly situated, are presumed to be employees of TeamHealth, unless it can be shown by Defendant that the physicians are independent contractors as determined under IRS guidelines.

### E.    Typicality of Claims and Relief Sought

96.     The claims of the Misclassification Class Representatives are typical of those of the class members as a whole in that their claims are based on the same contract and business and compensation practices. The relief sought by the Misclassification Class Representatives for misclassification compensation is also typical of the relief which is sought on behalf of the proposed Misclassification Subclass.

### F.    Adequacy of Representation

97.     Plaintiffs are adequate class representatives for the Misclassification Subclass. Their interests are co-extensive with those of the members of the proposed subclass they seek to represent. Plaintiffs have knowledge of the operative employment agreement as well as an intimate knowledge of the terms and conditions of employment with TeamHealth physicians staffed to medical facilities in Virginia. They are committed to representing the Misclassification Subclass and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

### G.    Rule 23(B)(3) Requirements

98.     Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of the operative employment agreement, as well as Defendant's practice of treating its physicians as independent contractors in Virginia since July 1, 2020.  Such policies and practices are applicable to all putative class members.

99.     A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of hundreds of individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Hundreds of like individual cases would clog the court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

100.     The putative class members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized compensation practices and their recovery in either an individual or class action will be based on the amount of wages that each Plaintiff has been denied by Defendant.

101.     The Misclassification Class Representatives and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members.

102.     It is desirable to concentrate the claims in this forum because the employment practices complained with respect to the Misclassification Class Representatives occurred in this forum.

103.     The Misclassification Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class

18

action litigation in this forum.

## Class Action Allegations (Unpaid Wage Subclass)

### A.    Class Definition for the Unpaid Wage Subclass

104.    Plaintiffs, the Rule 23 Unpaid Wage Class Representatives, seek to maintain claims pursuant to Va. Code §40.1-29, individually, and on behalf of the following class:

> **All current and former TeamHealth emergency physicians who were assigned to one of TeamHealth's clients' emergency facilities within Virginia at any time since July 1, 2020.**

105.    The above-defined class definition and its putative class members are hereinafter referred to as the "Unpaid Wage Subclass" and the Plaintiffs as class representatives for this subclass are referred to as the "Unpaid Wage Class Representatives."

106.    Plaintiffs and the Unpaid Wage Subclass all were made to assent to essentially identical agreements, subject the same [mis]classification as independent contractors, and the same TeamHealth work requirements and policies, including non-payment for non-patient-facing work such as medical charting, billing and/or documentation.

### B.    Efficiency of Class Prosecution of Common Claims

107.    Certification of a class of current and former TeamHealth Emergency Physicians is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Unpaid Wage Class Representatives and the proposed class. Conversely, proceeding on an individual basis will require the filing of potentially scores of duplicative individual suits which will waste judicial time and resources and create the risk of inconsistent or varying adjudications of common issues.

### C.    Numerosity and Impracticality of Joinder

108.    The class which the Class Representatives seeks to represent are so numerous that joinder is impracticable. On information and belief, the putative class during the liability period numbers over 50 current and former ER physicians who have been misclassified by TeamHealth as independent contractors and assigned to work in Virginia emergency departments and who have not been paid by TeamHealth for all hours worked.

### D.    Common Questions of Law and Fact

109.    The propriety of Defendant's pay practices with regard to its emergency physicians present common issues of fact in this matter. Moreover, because Plaintiffs and the Unpaid Wage Subclass are all made to sign nearly identical boilerplate contracts and addenda, the pay and classification practices at issue apply uniformly and present identical questions of law and fact with respect to the Unpaid Wage Class Representatives and those whom they seek to represent.

### E.    Typicality of Claims and Relief Sought

110.    The claims of the Unpaid Wage Class Representatives are typical of those of the class members as a whole in that their claims are based on the same contract and business and compensation practices. The relief sought by the Unpaid Wage Class Representatives for unpaid wages is also typical of the relief which is sought on behalf of the proposed Unpaid Wage Subclass.

### F.    Adequacy of Representation

111.    Plaintiffs are adequate class representatives for the Unpaid Wage Subclass. Their interests are co-extensive with those of the members of the proposed class they seek to represent. Plaintiffs have knowledge of the operative employment agreement as well as an intimate

knowledge of the terms and conditions of employment with TeamHealth and its staffing of emergency departments in Virginia. Plaintiffs are committed to being a representative of the Unpaid Wage Subclass and have retained counsel experienced in prosecuting class action employment cases to protect the interests of the class.

### G.    Rule 23(B)(3) Requirements

112.    Common questions of law and fact predominate over any questions affecting only individual members because the basis of the claims herein is the common application of the operative employment agreement, as well as Defendant's practice of failing to pay its emergency physicians for all hours they spent performing services for the benefit of TeamHealth and its clients' facilities.  Such policies and practices are applicable to all putative class members.

113.    A class action is superior to other available methods for adjudicating the controversy because other methods would involve the filing of hundreds of individual claims that are based on the same centralized scheduling and compensation facts and the same legal issues regarding same. Hundreds of like individual cases would clog the court's docket and waste judicial time and resources. Moreover, multiple individual cases based on the same legal issue(s) could lead to inconsistent or varying adjudications of the same issue(s).

114.    The putative class members do not have a substantial interest in individually controlling a separate action because any such claim would be based on the same centralized compensation practices and their recovery in either an individual or class action will be based on the amount of wages that each Plaintiff has been denied by Defendant.

115.    The Unpaid Wage Class Representatives and counsel are not aware of any other litigation concerning the controversy that has already begun by proposed class members.

116.    It is desirable to concentrate the claims in this forum because the employment practices complained with respect to the Unpaid Wage Class Representatives occurred in this forum.

117.    The Unpaid Wage Class Representatives and counsel do not foresee any substantial difficulties in managing a class action and counsel is experienced in managing class action litigation in this forum.

## COUNT I
### Violation of Va. Code § 40.1-28.7:7 (Misclassification of Workers)

118.    Va. Code § 40.1-28.7:7 permits misclassified workers to bring an action for damages against violating employers.  Plaintiffs, as the Misclassification Class Representatives, bring this claim on behalf of the Misclassification Subclass.

119.    Plaintiffs, and other similarly situated physicians, performed services for Defendant for renumeration.

120.    Plaintiffs, and other similarly situated physicians, were misclassified as independent contractors despite actually being employees under the "Internal Revenue Service guidelines" for evaluating independent contractor status.

121.    Plaintiff, and other similarly situated physicians are therefore entitled to damages for any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost, plus reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT II
### Violation of Va. Code § 40.1-29 (Virginia Wage Payment Act)

122.    Defendant has violated Va. Code § 40.1-29 by failing to pay Plaintiffs, and other

22

similarly situated ER physicians, their wages for all hours worked including hours spent

performing non-patient-facing services before the start or after the completion of a shift, which

work Defendant and its hospital clients required the physicians to perform. Plaintiffs, as the

Unpaid Wage Class Representatives, bring this claim on behalf of the Unpaid Wage Subclass.

123.    Defendant knew that Plaintiffs, and other similarly situated ER physicians, were

not paid for all hours worked. Defendant knowingly and/or willfully failed to pay Plaintiffs all

wages due.

124.    Pursuant to Va. Code § 40.1-29(J), Plaintiffs, and those similarly situated ER

physicians, are entitled to recover payment of their unpaid wages, an equal amount of liquidated

damages, prejudgment interest, and attorney's fees. Further, Defendant knowingly failed to pay

such wages, thus entitling Plaintiffs, and similarly situated ER physicians, to recover triple

damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief against Defendants:

A.    That this matter be certified as a Class Action pursuant to Rule 23 of the Federal

Rules of Civil Procedure for both the Misclassification Subclass and the Unpaid Wage Subclass;

B.    An award to the Plaintiffs and the Misclassification Subclass for an amount

compensating for all unpaid wages, salary, benefits, the value of benefits, expenses incurred,

and/or other compensation lost as result of Defendant's misclassification scheme;

C.    An award to the Plaintiffs and the Unpaid Wage Subclass for an amount

compensating for all unpaid wages due; and

1)  Liquidated damages equal to the unpaid wage compensation due under Va.

Code § 40.1-29(J); and/or

2) Treble damages under Va. Code § 40.1-29(J) for Defendant's knowing

violation of the law;

D.      Reasonable attorneys' fees and costs incurred in filing and prosecuting this

lawsuit pursuant to §40.1-29 and/or §40.1-28.7:7; and

E.      Such other relief as the Court deems appropriate.

Plaintiffs demand a **trial by jury**.

Respectfully submitted,

**Anuradha Naidu-McCown and Uduak Akan-
Etuk, on behalf of themselves and other similarly
situatedPlaintiffs**

By:____/s/_Craig Juraj Curwood_____
          Craig Juraj Curwood (VSB No. 43975)
          Zev H. Antell (VSB No. 74634)
          Samantha R. Galina (VSB No. 96981)
          Butler Curwood, PLC
          140 Virginia Street, Suite 302
          Richmond, VA 23219
          Telephone: (804) 648-4848
          Fax: (804) 237-0413
          craig@butlercurwood.com
          zev@butlercurwood.com
          samantha@butlercurwood.com