**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **ANURADHA NAIDU-MCCOWN, AND UDUAK AKAN-ETUK ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO.  3:23cv390** |
| **EMERGENCY COVERAGE CORPORATION d/b/a TEAMHEALTH** | |
| **Defendant.** | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs, Anuradha Naidu-McCown ("Dr. Naidu-McCown"), and Uduak Akan-Etuk ("Dr. Akan-Etuk"), on behalf of themselves and others similarly situated, (collectively "Plaintiffs"), file this Response in Opposition to the Defendant Emergency Coverage Corporation d/b/a TeamHealth's ("Defendant"  or "TeamHealth") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), 12(b)(1) and 12(b)(7) and Brief in Support thereof [ECF, 12-14][1]

The Plaintiffs bring claims on behalf of themselves and those similarly situated for unlawful misclassification of physicians as "independent contractors" instead of employees in violation of Va. Code § 40.1-28.7:7 (Count I) and for unpaid wages in violation of the Virginia

---

[1] ECF 12 and 13 are identical.

Wage Payment Act ("VWPA"), Va. Code § 40.1-29 (Count II). Plaintiffs bring this matter as a class action pursuant to Rule 23 on behalf of themselves and others similarly situated current or former physicians and in the second count specifically on behalf of all current and former similarly situated emergency physicians employed by Defendant in the Commonwealth of Virginia.

## FACTUAL BACKGROUND AND ALLEGATIONS

Plaintiffs are emergency room physicians, both of whom were employed by ECC and worked at ECC's clients' hospitals. Compl. ¶ 7-8. Dr. Naidu-McCown began working as a pediatric emergency room ("ER") physician at Chippenham Johnston/Willis Hospital in or about December 2015 through a predecessor entity or contractor before TeamHealth took over the ER contract in or about December of 2018 until her separation from TeamHealth on or about October 6, 2021. Compl. ¶ 10. Dr. Akan-Etuk began working as an ER physician at John Randolph Medical Center and Tri-Cities Emergency Center on or about November 2, 2006, through a predecessor entity or contractor before TeamHealth took over the ER contract in or about December of 2018. Dr. Akan-Etuk's employment with TeamHealth ended on or about August 5, 2021. Compl. ¶ 11. Plaintiffs allege that the Defendant improperly misclassified them and other physicians as independent contractors, despite the fact that TeamHealth and its' clients controlled the Plaintiffs' working conditions in such a matter as to a render them employees of the Defendant. Plaintiffs were made to sign a "Medical Professional Independent Contractor Agreement" with TeamHealth, (hereinafter "MPICA"), with the same terms, except for salary, which differed based on position and location. Compl. ¶ 13.

Plaintiffs had no control over, or role in determining the pricing for the medical services that they provided. Compl. ¶ 26. Plaintiffs worked exclusively in client facilities such as

emergency rooms using equipment provided by the facilities and assisted by staff provided by the facilities and/or TeamHealth. Compl. ¶ 28. Plaintiffs were required by Defendant to submit various billing documents and medical charting/documentation within the timeframe specified by Defendant, or else face a reduction or offset to their pay from Defendant. Compl. ¶ 29-30. The Defendant requires that Plaintiffs complete medical charting for every patient – this labor-intensive endeavor involves summarizing the patient's treatment. Compl. ¶ 31- 32. Plaintiffs, and similarly situated ER physicians, were regularly logged-in and entering charting data on HCA's EMR systems after the end of their ER shifts, and on days off from work, in connection with their ER duties. Compl. ¶ 34.

The Plaintiffs did not determine how to staff the ERs or the length of shifts at the ER's where they worked. Compl. ¶ 43. The Defendant and their hospital clients determined the number of physicians staffing the ER at any given time, who those physicians were, and the length of their shift. Compl. ¶ 43. In order for Plaintiffs to perform their ER duties involving patient service, they were routinely unable to complete all medical charting duties within their scheduled shifts due to high workloads. Compl. ¶ 44. On many occasions, Plaintiffs would stay beyond their scheduled shifts to treat patients, Plaintiffs were not compensated for this time. Compl. ¶ 46. Plaintiffs would, at the end of each scheduled shift worked, or before the start of their next shift, or on their days off, log into HCA's EMR system to conduct charting, billing, and/or documentation required by Defendant, but Defendant did not pay for any such time beyond their scheduled ER shift. Compl. ¶ 48. Defendant was aware that Plaintiffs, and similarly situated ER physicians, worked unpaid hours performing medical services relating to charting and billing, and knowingly failed to compensate them for extra hours necessary to perform such non-patient-facing services. Compl. ¶ 49.

3

ARGUMENT

**I.**  **The Virginia Wage Payment Act ("VWPA") creates a cause of action for Plaintiffs to recover unpaid wages.**

The VWPA, Va. Code § 40.1-29, was amended effective July 1, 2020, to provide employees with a private right of action to bring suit for unpaid wages. Prior to the 2020 amendment employees in Virginia had no private right of action for unpaid wage claims and instead had to submit their administrative claims for unpaid wages to the Commissioner of Labor. The legislature's intent to provide a substantive right to recover unpaid wages is made clear by a plain reading of the amended statute and supported by case law from the Virginia courts.

**A.**  **The plain language of the 2020 Amendment establishes a private right of action to recover unpaid wages.**

The 2020 amendment to the Virginia Wage Payment Act specifically provides that if the employer "fails to pay wages in accordance with this section the employee may bring an action". Va. Code § 40.1-29(J). The remedies provided by the statute include recovering the wages owed, liquidated damages, prejudgment interest on those wages, attorneys' fees, and possibly treble damages. Subsection G of the statute states:

> In addition to being subject to any other penalty provided by the provisions of this section, any employer who fails to make payment of wages in accordance with subsection A shall be liable for the payment of all wages due, and an additional equal amount as liquidated damages, plus interest at an annual rate of eight percent accruing from the date the wages were due.

Section J of the statute similarly states:

> [I]f an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees[….]against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal

4

> amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs.

The Defendant's contention that Va. Code § 40.1-29 does not entitle employees to receive wages is meritless and anathema to any reading of the full statute. If the statute does not, as Defendant claims, entitle employees to recover unpaid wages, then the legislature's inclusion of that exact remedy (among others) is rendered meaningless.

The Defendant outlines all of the manners in which an employer must pay its employees, however the Defendant misses Sections G and J. *See* Def. Mem. (ECF 14, p. 7). Defendant also misses a significant aspect of subsection (A) which states: "All employers operating a business or engaging an individual to perform domestic service shall establish regular pay periods **and rates of pay** for employees except executive personnel." Va. Code § 40.1-29 (A) (emp. added).

The statute further provides that "the determination as to the 'value of the wages earned' shall be made by combining all wages the employer failed or refused to pay pursuant to this section and § 40.1-29.3." Va. Code § 40.1-29 (E)(2).[2]

Read as a whole, with subsection (A) requiring the employer to establish "rates of pay," subsection (E) referencing failure to pay wages, and subsection (J) providing for a private right of action to include recovery of "the wages owed," (plus liquidated damages, attorney's fees and treble damages), the only reasonable interpretation of § 40.1-29 is that it provides a substantive right to recover one's unpaid wages. *See Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 (2016) ("The one canon of construction that precedes all others is that '[w]e presume

---

[2] Va. Code § 40.1-29.3 applies to employees of "Carriers" or "Derivative Carriers" and is inapplicable to this case.

5

that the legislature says what it means and means what it says.' *In re: Woodley*, 290 Va. 482, 491, 777 S.E.2d 560, 565 (2015).") Plaintiffs and those similarly situated seek unpaid wages for conduct that occurred after the amendment went into effect on July 1, 2020. Compl. ¶104.

### B. The cases relied upon by Defendants demonstrate the VWPA provides for the right to recover unpaid wages.

Defendant's interpretation of *Pallone v. Marshal Legacy*, 97 F. Supp. 2d 742 (E.D. Va. 2000), and *Mar v. Malveaux*, 60 Va. App. 759, 770 (Va. App. 2012), is misplaced. Using circular logic, Defendant relies on *Pallone* and *Mar* – both decided well before the 2020 amendment – to support its incorrect conclusion that the 2020 amendment of the VWPA does not create a private right of action to recover unpaid wages. (ECF 14, p.6).

In *Pallone*, the Court refused to insert a private right of action, where an administrative remedy was provided, namely submitting a claim for unpaid or untimely wages to the Commissioner of Labor. *Pallone,* 97 F. Supp. 2d at 745. However, the legislature added a private right of action with the 2020 amendment, which states: "without regard to any exhaustion of alternative administrative remedies provided for in this section, if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b)…" Va. Code § 40.1-29(J). For the first time, aggrieved employees in Virginia were able to pursue a private right of action against employers who failed to pay wages in accordance with Va. Code § 40.1-29.

In *Pallone*, which was decided in 2000, 20 years prior to the legislature amending the VWPA to include a private right of action, the Court was tasked with determining whether the pre-2020 amendment version of the VWPA created a private cause of action. *Pallone*, 97 F.

Supp. 2d at 743. The Court determined that there was no private right of action under the statute in effect at that time. *Id.*

While the *Pallone* holding has been superseded by the 2020 amendment to the VWPA, it also does not stand for the proposition that wages themselves could not be recovered as the Defendant attempts to assert. Rather the Court held that individuals could not file a lawsuit to recover unpaid wages, they would need to file an administrative claim with the Commissioner of Labor in order to do so. *Pallone,* 97 F. Supp. 2d at 745.

The Defendant provides a quote from the opinion, but omits the entirety of the quote, which states:

> [T]he Act does not create the right to be paid for work performed; that right exists, if at all, by virtue of other legal theories, including the common law doctrines of contract and quantum meruit. Simply put, the Act prescribes the *manner* in which an employer must pay certain employees. <u>And in that regard, the Act provides an express, albeit limited, administrative remedy for employees aggrieved by an employer's failure to comply with the Act's requirements. Specifically, the statute provides that an aggrieved employee may submit a claim for unpaid or untimely paid wages to the Commissioner of Labor and Industry ("the Commissioner"), and the Commissioner may in his discretion pursue those claims on behalf of the employee, through both the administrative process and, if need be, through court action. *See* Va. Code § 40.129(F).</u>

*Pallone,* 97 F. Supp. 2d at 745. (underlined language added to show the portion that Defendant omitted from its quote at ECF 14, p. 6-7).

As *Pallone* makes clear, under the old version of § 40.1-29 (2000) employees did not have a private right of action and thus the only claims that those employees could bring were "by virtue of <u>other</u> legal theories, including the common law doctrines of contract and quantum meruit" *Id.* at 745 (emphasis added). However, even the *Pallone* case recognized at that time that the employee could submit an administrative claim for unpaid wages to the Commissioner of Labor.

7

The Court continues to say that once the Commissioner or the Court "establishes that the employer is in violation of the Act **and owes the employee back wages**, the Commissioner may retain a private attorney to pursue the employer in court '**to collect moneys owed to the employee** or the Commonwealth.'" *Pallone* at 745-746. This further shows that even under the pre-2020 amendment version of the VWPA, Plaintiffs were entitled to back wages owed to them, but they had to file an administrative claim to recover such wages.

Furthermore, the Virginia Court of Appeals has defined wages, albeit in a separate context, to mean, "wages are 'compensation of employees based on time worked or output of production.' []. (citing Black's Law Dictionary 1416 (5th ed. 1979))." *B.P. Solar & Ace Am. Ins. Co. v. Jones*, 49 Va. App. 322, 326 (Va. App. 2007).

Therefore, Defendant's reading of *Pallone* as holding that unpaid wages were not recoverable under the pre-2020 amendment version of the VWPA is plainly wrong. *See* ECF 14, p. 7-8. Rather, *Pallone* stands for the unremarkable proposition that the pre-2020 amendment version of the VWPA (2000) did not provide a private right of action for recovery of unpaid wages.

Likewise, *Mar v. Malveaux*, is mis-relied on by the Defendant. *Mar* concerned the due process procedures for the Labor Commissioner's investigation of complaints under the old version of VWPA (2012). Defendant incorrectly argues that *Mar* somehow limited an employee's relief under the VWPA to only breach of contract or quantum meruit damages. But that holding, of course, was premised on the fact that the old VWPA did not provide a private right of action. Rather, the Virginia Court of Appeals explicitly recognized that the employee could recover unpaid wages under the old VWPA, but it had to go through the Commissioner of Labor. The Mar opinion cited to *Pallone*, "the United States District Court for the Eastern

District of Virginia has recognized that the Wage Payment Act, Code § 40.1-29, 'provides that an aggrieved  employee may submit a claim for unpaid or untimely paid wages to the [Commissioner], and *the Commissioner may in his discretion* pursue those claims on behalf of the employee, through both the administrative process and, if need be, through court action.' *Pallone v. Marshall Legacy Inst.*, 97 F. Supp. 2d 742, 745 (E.D. Va. 2000) (emphasis added)." *Mar v. Malveaux*, 60 Va. App. 759, 770 (Va. App. 2012). Thus, *Pallone* and *Mar* do not stand for the proposition for which Defendant argues. Instead, both cases recognized that the old VWPA provided a right to claim unpaid wages, but such right was procedurally limited by the old Act.

In any event, *Pallone* and *Mar* provide little, if any, persuasive authority since the 2020 amendments took effect, since those cases are not interpreting the current law. The Eastern District of Virginia found in *Nelson v. Area Wide Protective Inc.* on a Motion to Dismiss that Plaintiffs were entitled to pursue claims under the VWPA § 40.1-29(J) for unpaid wages after the VWPA amendment became effective July 1, 2020. *Nelson v. Area Wide Protective, Inc*., 2021 U.S. Dist. LEXIS 264170, *22 (E.D. Va. 2021) (Trenga, J.). In that case the Plaintiffs alleged under the Fair Labor Standards Act ("FLSA") and the VWPA that their employer had a systemic company-wide policy where it failed to compensate employees for all hours worked and overtime at the proper rate. *Nelson* at 3. The Court held in part:

> Plaintiffs claim wages for all hours worked, including all overtime hours, for the period August 4, 2018, through October 29, 2020. WEK moves to dismiss this claim on the grounds that a private right of action for any unpaid wages under § 40.1-29(J) of the VWPA did not exist until July 1, 2020, and for overtime wages, not until July 1, 2021; and Plaintiffs' ability to recover wages in this action is limited by the effective date of those enactments. The Court agrees with this position, since the Court cannot discern any legislative intent to make retroactive either the VWPA's private right of action, effective July 1, 2020, or the amendment to § 40.1-29(J) of the

9

> VWPA, effective July 1, 2021, extending the scope of the VWPA private right of action to enforcement of the Virginia Overtime Wage Act, also effective July 1, 2021. *See City of Charlottesville v. Payne*, 856 S.E.2d 203, 211 (2021) ('The failure to express an intention to make a statute retroactive evidences a lack of intention to do so.'). For these reasons, Plaintiffs' claim under Count II is limited to those wages, other than overtime wages, for the period July 1, 2020 through October 29, 2020.

*Nelson* at 22.

Here, Plaintiffs only seek unpaid wages from the date of the amendment, July 1, 2020,

onward and thus the Court need not examine whether the change in law was retroactive.

## II.   Dr. Naidu-McCown has alleged sufficient facts to establish that she has standing to sue under the Virginia Wage Payment Act and the Virginia Misclassification statute.

TeamHealth premises its effort to dismiss Dr. Naidu-McCown for lack of standing on the

invalid notion that she has failed to plausibly allege that she is an "individual" for purposes of

Va. Code § 40.1-28.7:7, or that she was an "employee" of TeamHealth under § 40.1-29. *See*

[Doc. 14 at pp. 9-11].  Defendant's contention is without merit.

The Defendant unnecessarily focuses on the written contract between the parties and

presumes because Dr. Naidu-McCown signed the ICA on behalf of Capital KidMed, P.C., that

she cannot allege to have been an employee. But this ignores the fact that Dr. Naidu-McCown's

claims exist outside of what the contract says.  Afterall, the contract is titled the Medical

Professional Independent Contractor Agreement and expressly says the physician signing it is

"an independent contractor and not a [] [TeamHealth] employee" (*See* Doc. 1-3, First Am.

Addendum 1 to Dr. Naidu-McCown ICA, ¶ 6).  Other courts have considered such arguments

and easily found that that a contract disclaiming an employment relationship does not make it so.

*See Astorga v. Castlewood Consulting, LLC,* 2015 U.S. Dist. LEXIS 63249, *8 (D. Md. 2015)

("the simple fact that Plaintiff signed an independent contractor agreement does not

automatically mean he is an independent contractor."); *see also Robicheaux v. Radcliff Material,*

10

*Inc.*, 697 F.2d 662, 667 (5th Cir. 1983). Additionally, Dr. Naidu-McCown signed and printed her name on the Addendum below the acknowledgement stating, "The undersigned Individual acknowledges and accepts the duties and restrictions set forth above". Doc. 1-3, First Am. Addendum 1 to Dr. Naidu-McCown ICA, at 1. So, at a minimum, under the contract that Defendant drafted, Dr. Naidu-McCown was intended to be an "individual" performing "duties" for the Defendant. *Id.*[3]

In any event, it is axiomatic that an employer cannot contract itself out of its statutory wage obligations. Otherwise, unscrupulous employers would be rewarded for forcing all of their employees to sign "independent contractor" agreements.

Rather, Courts recognize that the test to determine employment status is not based on the written contract but is a fact-based analysis. As the Court in *Hill v. Pepperidge Farm* explained, it must utilize the six -factor economic realities test to determine if the **worker** themself is an employee as defined in Va. Code § 40.1-29. *See* 2022 U.S. Dist. LEXIS 146817, *6 (E.D. Va. 2022) (Hudson, J.) ("the United States Court of Appeals for the Fourth Circuit has adopted the 'economic realities test.' *Schultz v. Cap. Int'l. Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016). This tests the relationship **between the worker and their employer** to determine if 'the worker is economically dependent on the business to which he renders services or is, as a matter of economic [reality], in business for himself.' *Schultz*, 466 F.3d at 304 (internal quotations

---

[3] Defendant ignores this "individual"-performing- "duties" provision of its contract to incorrectly argue that the ICA provides that that "relationship…only existed between ECC and Capital KidMed, P.C. – and not between ECC and Naidu-McCown herself." ECF 14, p. 10, and repeated verbatim at p. 11.

omitted)") (emp. added). Regardless of who signed the contract, Dr. Naidu-McCown is the worker who is asserting, and has standing to assert, the claim.

Moreover, the Defendant's argument completely ignores the statutory language in Va. Code §§ 40.1-28.7:7 and 40.1-2. The misclassification of workers statute makes clear that individuals, such as Dr. Naidu-McCown "who ha[ve] not been properly classified an as employee may bring a civil action for damages against his employer."

The text of Va. Code § 40.1-28.7:7 reads:

> A. An **individual who has not been properly classified as an employee may bring a civil action for damages against his employer** for failing to properly classify the employee if the employer had knowledge of the individual's misclassification. An individual's representative may bring the action on behalf of the individual. If the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action.

> B. In a proceeding under subsection A, **an individual who performs services for a person for remuneration shall be presumed to be an employee of the person** that paid such remuneration, and the person that paid such remuneration shall be presumed to be the employer of the individual who was paid for performing the services, unless it is shown that the individual is an independent contractor as determined under the Internal Revenue Service guidelines.

Va. Code § 40.1-28.7:7(A-B). Misclassification of workers. (emp. added).

Va. Code § 40.1-2 provides the definitions for "employer" and "employee", which apply to statutes contained in Title 40.1, including the misclassification statute, Va. Code § 40.1-28.7:7 and the Virginia Wage Payment Act, Va. Code § 40.1-29.

The statute defines "'Employee' [to] mean [] any person who, in consideration of wages, salaries or commissions, may be permitted, required or directed by any employer to engage in any employment directly or indirectly."

In fact, in a similar action for unpaid wages under Va. Code § 40.1-29(J), Plaintiffs sued both their corporate employer and individual defendants. *Cornell v. Benedict*, 878 S.E.2d 191 (2022). The Supreme Court of Virginia was tasked with determining whether the individual defendants counted as "employers" under Va. Code § 40.1-29(J), which is defined in Va. Code 40.1-2. The Court did not look to contracts to determine who the employer was, rather it looked to Va. Code § 40.1-2 which provides the definitions for the terms used in Va. Code § 40.1-29 including "employee" and "employer". Va. Code § 40.1-2 defines "employee" as "any person who, in consideration of wages, salaries or commissions, may be permitted, required or directed by any employer to engage in any employment directly or indirectly."  The Court then looked to the Black's Law Dictionary to define person; it states a "'Person' means 'a human being; the living body of a human being; an entity (such as a corporation) that is recognized by law as having most of the rights and duties of a human being.' Black's Law Dictionary 1378-79 (11th ed. 2019)." *Cornell v. Benedict*, 878 S.E.2d 191, 195 (2022).

 Dr. Naidu-McCown is a person, who performed services for TeamHealth in consideration of wages, and thus she meets the definition for "employee" contained in Va. Code § 40.1-2, which provides the definitions as used in Va Code §§ 40.1-28.7:7 and 40.1-29. As such, Dr. Naidu-McCown has standing to assert her claims under Virginia's misclassification and wage payment statutes.

The cases cited by the Defendants are FLSA cases, which is not at issue in this case. The Supreme Court of Virginia stated that it would be inappropriate to import FLSA standards to the

13

Virginia Wage Payment Act. *Cornell v. Benedict*, 878 S.E.2d 191, 195 (2022) ("It would be inappropriate to read in FLSA terminology into the Virginia statute. Our canons of statutory construction presume that the General Assembly's decision not to adopt the FLSA definition of "employer" as a whole represents a conscious decision with deliberate implications.")

However, even if the Court were to find that those FLSA cases apply, it would still have to find that Dr. Naidu-McCown has standing to bring her claims.

The *Orbit* case cited by Defendants actually supports the Plaintiffs' argument. FedEx and Orbit entered into a written contract, known as the Operating Agreement, through which "FedEx hired Orbit, through its president Gary Simon, to perform home delivery services of FedEx packages in Virginia." *Orbit Corp v. FedEx Ground Package Sys., Inc.*, 2015 U.S. Dist. LEXIS 99873, *2-3 (E.D. Va. 2015). Orbit owns and operates trucking equipment while Gary Simon, its president, was the person who acted as a FedEx driver performing home deliveries. *Orbit Corp v. FedEx Ground Package Sys.*, Inc., at 2.

The fact that the Operating Agreement was entered into between FedEx and Orbit with Gary Simon as its President is strikingly similar to the ICA entered into between TeamHealth and Capital KidMed P.C., with Dr. Naidu McCown as its Director and sole shareholder. However, the Defendant misconstrues the Court's opinion by omitting the beginning portion of the cited quote. *See* Def. Mem. At p. 10. In fact, the Court stated that while Orbit failed to state a plausible right to relief, Gary Simon, its president, **did allege a plausible claim** under the FLSA for overtime. *See Orbit Corp v. FedEx Ground Package Sys., Inc.*, at 8 ("Although Simon has alleged a plausible FLSA claim for overtime compensation, Orbit has not. Even applying the forgiving standard set forth in *Seagram* and *Butler*, Orbit fails to state a plausible right to relief as it improperly attempts to assert a FLSA claim either on behalf of a corporation, or on behalf of

unnamed individuals that are not a party to this action."(internal citations omitted)) (underlined language added to show the portion that Defendant omitted from its quote at ECF 14, p. 10).

Furthermore, the Court held that the amended complaint "assert[ed] sufficient facts to plausibly claim that Simon is an "employee" of FedEx who did not receive overtime compensation" *Orbit* at 7-8.

The Defendant also cites the *Crumbling v. Miyabi Murrells Inlet, LLC* case, which is irrelevant. In that case the Plaintiffs sued restaurants where they did not work. 192 F. Supp. 3d 640, 646 (D. Sc. 2016). Plaintiffs here are suing TeamHealth, the entity for whom they worked, performing services at TeamHealth's client hospitals.  Compl. ¶¶ 10-11,19, 22.

TeamHealth also cites the *Berger v. NCAA* case, where the Court held that the Appellant lacked standing to sue any other defendant than the university that they attended. 843 F.3d 285, 288 (7th Cir. 2016). The parallel would be if the Plaintiffs sued Hospitals where they did not work, of course they would not have standing to do so. However, that is not the case before the Court.

## III.   Dr. Naidu-McCown's claims should not be dismissed; Defendant's argument that Plaintiffs failed to join an indispensable party is without merit.

Plaintiffs did not join Capital KidMed P.C. because it is not a necessary party to this litigation. Dr. Naidu-McCown alleges that she was misclassified and did not receive full compensation for all of the hours that she worked pursuant to Va Code §§ 40.1-28.7:7, 40.1-29. Again, TeamHealth relies on a *strawman* contractual argument in stating "[Dr.] Naidu-McCown's claims arise [] out of this contract". (ECF 14, p.12). The Plaintiffs do not assert any contract claims, Plaintiffs only assert claims arising out of statutory violations.  Put another way, Plaintiffs claims would exist just the same even if there were no ICA contract.

15

Finally, while Plaintiffs did not join Capital KidMed P.C. because it is entirely unnecessary, it should also be noted that it would be an improper party, as it is a Professional Corporation, not an individual, and Corporations cannot be misclassified -- only "individuals" can. Va. Code § 40.1.28.7:7(A). To that end the misclassification statute states only "an <u>individual</u> who has not been properly classified as an employee may bring a civil action for damages against his employer…" Va Code § 40.1-28.7:7. Nor is Capital KidMed P.C. an employee under Va Code § 40.1-29, Dr. Naidu-McCown is the "employee" because she is a "person" as defined in Va Code § 40.1-2.

Dr. Naidu-McCown declines Defendant's invitation to name Capital KidMed, P.C. as a party, and there is no basis under the law to require such entity to become a party to these claims brought under the misclassification and wage payment laws.

<u>**CONCLUSION**</u>

The Virginia Wage Payment Act provides Plaintiffs with the ability to sue in Court to recover unpaid wages, as these Doctors have alleged herein. Furthermore, Defendant's arguments on standing and failure to join an indispensable party are without merit for the reasons stated. For all the foregoing reasons, Plaintiffs and others similarly situated, by counsel, respectfully request that this Court deny the Defendant's Motion to dismiss.

Respectfully submitted,
**Anuradha Naidu-McCown, and Uduak Akan-Etuk and others similarly situated**
Plaintiffs

By:___*/s/ Samantha R. Galina*
Craig Juraj Curwood (VSB No. 43975)

16

Zev H. Antell (VSB No. 74634)
Samantha R. Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
craig@butlercurwood.com
zev@butlercurwood.com
samantha@butlercurwood.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of August 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filling to the following counsel of record:

M.F. Connell Mullins, Jr., Esq.
Kasey L. Hoare, Esq.
Spotts Fain PC
411 E Franklin Street Suite 600
Richmond, VA 23219
Telephone: (804) 697-2000
Fax: (804) 697-2100
Email: cmullins@spottsfain.com
Email: khoare@spottsfain.com


*Counsel for Defendant*

M. Jefferson Starling III, Esq.
Ryan Hodinka, Esq.
Balch & Bingham LLP
1901 Sixth Ave. N. Suite 1500
Birmingham, AL 35203
Telephone: (205) 226-3406
Fax: (205) 488-5889
Email: jstarling@balch.com


*Counsel for Defendant*

By:   */s/ Samantha R. Galina*
          Craig Juraj Curwood (VSB No. 43975)
          Zev H. Antell (VSB No. 74634)
          Samantha R. Galina (VSB No. 96981)
          Butler Curwood, PLC
          140 Virginia Street, Suite 302
          Richmond, VA 23219
          Telephone: (804) 648-4848
          Fax: (804) 237-0413
          craig@butlercurwood.com
          zev@butlercurwood.com
          samantha@butlercurwood.com

          *Counsel for Plaintiffs*

18