IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANURADHA NAIDU-MCCOWN,  )
*et al.*, on behalf of themselves and  )
others similarly situated,  )
                                        )
                Plaintiffs,  )
                                        )
v.  )    Civil Action No. 3:23-cv-390–HEH
                                        )
EMERGENCY COVERAGE  )
CORPORATION, d/b/a Team Health,  )
                                        )
                Defendant.  )

**MEMORANDUM OPINION**
(Denying Defendant's Motion to Dismiss)

THIS MATTER is before the Court on Defendant Emergency Coverage Corporation's, d/b/a TeamHealth ("Defendant" or "TeamHealth"), Motions to Dismiss (collectively, the "Motions," ECF Nos. 12, 13), filed on August 1, 2023. Defendant moves to dismiss Count II of the Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). (Mem. in Supp. at 1, ECF No. 14.)[1] The parties have filed memoranda supporting their respective positions, and the Court heard oral argument on October 27, 2023. At the hearing, the Court took the matter under advisement. (Minute Entry at 1, ECF No. 22.) For the reasons that follow, the Court will deny Defendant's Motions.

---

[1] Although Defendant filed two (2) separate Motions (ECF Nos. 12, 13), it only filed one Memorandum in Support of the Motions (ECF No. 14).

## I. BACKGROUND

TeamHealth is a staffing company that provides Emergency Room ("ER") physicians to its client hospitals, a number of which are located in Virginia. (Compl. ¶ 9.) Plaintiffs Anuradha Naidu-McCown ("Dr. Naidu-McCown") and Uduak Akan-Etuk ("Dr. Akan-Etuk") (collectively, "Plaintiffs") worked for TeamHealth as ER physicians. (*Id.* ¶¶ 10–11.) Dr. Naidu-McCown worked as a pediatric ER physician at Chippenham Johnston/Willis Hospital ("Chippenham") from December 2015 to October 6, 2021. (*Id.* ¶ 10.) Dr. Akan-Etuk worked as an ER physician at John Randolph Medical Center ("JRMC") and Tri-Cities Emergency Center ("TCEC") from November 2, 2006, to August 5, 2021.[2] (*Id.* ¶ 11.) All three (3) of these hospitals are owned by HCA Healthcare ("HCA"), a client of TeamHealth. (*Id.* ¶¶ 21, 23–24.)

As a condition of employment, Plaintiffs were required to sign a Medical Professional Independent Contractor Agreement (the "Agreement(s)") with TeamHealth. (*Id.* ¶ 13; *see* Exs. 1–3, ECF Nos. 1-2–1-4.) On March 18, 2020, Dr. Naidu-McCown amended her Agreement by adding Capital KidMed, P.C. ("Capital KidMed") as the "Company Name" of the "Professional." (*See* Ex. 2 at 1; Mem. in Supp. at 10, ECF No. 14.) While Plaintiffs and TeamHealth negotiated an hourly rate of pay, all other terms of the Agreement were drafted by TeamHealth. (Compl. ¶ 14.) Under TeamHealth, Dr. Naidu-McCown "was required to, and regularly worked[,] a minimum of 15 shifts per month." (*Id.* ¶ 19.) However, during the COVID-19 pandemic, she

---

[2] Until December 2018, Plaintiffs worked under TeamHealth's predecessor entity or contractor. (Compl. ¶¶ 10–11.)

2

believes she worked as many as twenty (20) shifts per month. (*Id.* ¶ 20.) While Dr. Akan-Etuk worked for TeamHealth, he "was required to, and regularly worked[,] a minimum of 10 to 15 shifts per month" at JRMC and "also may have worked a few shifts" at TCEC. (*Id.* ¶ 22.) TeamHealth required Plaintiffs to work a minimum of 150 hours per month in shifts between eight (8) to twelve (12) hours. (*Id.* ¶¶ 40–42 (citing Exs. 2–3).) Plaintiffs were paid a flat hourly rate for the number of hours or shifts they worked. (*Id.* ¶ 37.) TeamHealth and the client hospitals "determined the number of physicians staffing the ER at any given time, who those physicians were, and the length of their shift." (*Id.* ¶ 43.)

As ER physicians, Plaintiffs were required to diagnose, treat, and admit patients in HCA's ER facilities using the facilities' equipment and assisted by staff of the facilities or TeamHealth. (*Id.* ¶¶ 25, 28.) Plaintiffs had no role in determining the prices of the medical services they rendered. (*Id.* ¶ 26.) TeamHealth provided Plaintiffs with medical malpractice insurance. (*Id.* ¶ 27.) TeamHealth and HCA required Plaintiffs "to complete all client required medical documentation and/or medical charting within a specified timeframe following treatment, or else face a reduction or offset to their pay from [TeamHealth]." (*Id.* ¶ 30.) TeamHealth required medical charting for each patient seen by Plaintiffs. (*Id.* ¶ 32.) Plaintiffs regularly completed medical charting after the end of their ER shifts and on their days off because of their ER duties involving patient services. (*Id.* ¶¶ 34, 44.) Plaintiffs would also work beyond their scheduled shift to treat patients. (*Id.* ¶ 46.) Although Defendant was aware of these practices, Plaintiffs were not paid for

3

the time they worked beyond their scheduled shifts to complete medical documentation and charting or to treat patients. (*Id.* ¶¶ 46, 48–49.)

Plaintiffs bring a class action alleging that TeamHealth misclassified its physicians as independent contractors in violation of Virginia Code § 40.1-28.7:7. (*Id.* ¶¶ 118–21.) Additionally, Plaintiffs claim that TeamHealth failed to adequately compensate its ER physicians in violation of the Virginia Wage Payment Act ("VWPA"). (*Id.* ¶¶ 122–24.)

## II. LEGAL STANDARD

Defendant moves to dismiss Count II pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7), arguing that Plaintiffs failed to allege a violation of the VWPA, that Naidu-McCown lacks standing, and that Plaintiffs failed to join an indispensable party. (Mem. in Supp. at 1.)

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the Court's jurisdiction over the subject matter of a complaint. Such a challenge can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). For a facial challenge, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" *Id.* (quoting *Kerns*, 585 F.3d at 192). When a party brings a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply." *Id.* (citing *Kerns*, 585 F.3d at 192)

4

(quotations omitted). Here, Defendant brings a facial challenge to Count II under Rule 12(b)(1) for lack of standing.

Subject-matter jurisdiction requires a justiciable case or controversy within the meaning of Article III of the United States Constitution. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984) (*abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 574 U.S. 118 (2014)). Standing constitutes one component of justiciability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing presents a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The Supreme Court has established that the "irreducible constitutional minimum" of standing includes three elements: (1) an injury-in-fact, (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61 (citations and quotations omitted). Because Plaintiffs seek to invoke this Court's jurisdiction, Plaintiffs bear the burden of establishing all three elements. *Id.* at 561.

To establish an injury-in-fact, a plaintiff "must allege a distinct and palpable injury to himself[.]" *Warth*, 422 U.S. at 501 (citations omitted). The injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Additionally, claims asserting "'generalized grievance[s]' shared in substantially equal measure by all or a large class of citizens . . . normally do[] not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499 (citations omitted).

5

## B. Rule 12(b)(6)

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (internal quotations omitted). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387) (alteration in original). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).

A court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

6

## C. Rule 12(b)(7)

A Rule 12(b)(7) motion requires a district court to analyze whether dismissal is appropriate for failure to join an indispensable party pursuant to Rule 19. FED. R. CIV. P. 12(b)(7). Under Rule 19, the Court "asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020) (citation omitted). A party can be necessary under either Rule 19(a)(1)(A) or (B). *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014). Under Rule 19(a)(1)(A), a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A). Under Rule 19(a)(1)(B), a party must be joined if:

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1)(B). The defendant bears the burden of showing the nonjoined party is a necessary party. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

If the Court finds that "the nonjoined party is necessary and indispensable to the action, [and] joinder would destroy subject matter jurisdiction, the [C]ourt must dismiss the action." *Kayablian*, 948 F.3d at 218–19. If a necessary party cannot be joined, the Court "must determine whether, in equity and good conscience, the action should proceed

7

among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). However, dismissal is "a drastic remedy that should be employed only sparingly." *Home Buyers*, 750 F.3d at 433 (internal quotations and alterations omitted). The decision to dismiss "must be made pragmatically, in the context of the 'substance' of each case, rather than by procedural formula." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968).

### III. DISCUSSION

#### A. The VWPA provides workers the right to bring a private action against their employer for unpaid wages.

At issue is whether the VWPA permits workers to sue their employers for unpaid wages. Defendant urges this Court to dismiss Count II under Rule 12(b)(6) because "the VWPA does not create 'the right to be paid for work performed; that right exists, if at all, by virtue of other legal theories, including the common law doctrine of contract and quantum meruit.'" (Mem. in Supp. at 2 (quoting *Pallone v. Marshall Legacy Inst.*, 97 F. Supp. 2d 742, 745 (E.D. Va. 2000)).) Defendant argues that the unpaid work upon which Plaintiffs' base their claim consists of "off-the-clock . . . activities" outside the scope of their Agreements, and, therefore, do not trigger the right to private action under VWPA. (Reply at 3–6, ECF No. 16.) Defendant further asserts that the VWPA only dictates the manner in which employers must pay their employees. (Mem. in Supp. at 7–8.) Thus, a contractual claim is the appropriate vehicle for Plaintiffs' grievance because Plaintiffs' right to receive pay or wages is solely derived from their Agreements. (*Id.* at 8.)

8

Conversely, Plaintiffs maintain that the plain language of the VWPA, as amended in 2020, provides workers with the right of private action against their employers for unpaid wages. (Resp. in Opp'n at 4–10 (citing VA. CODE ANN. § 40.1-29).) Plaintiffs point to the canons of construction and the presumption that "'the legislature says what it means and means what it says.'" (*Id.* at 5–6 (quoting *In re Woodley*, 777 S.E.2d 560, 565 (Va. 2015)).) Plaintiffs also note that they only seek unpaid wages from the amendment's effective date, July 1, 2020, onward. (*Id.* at 10.)

As amended in 2020, the VWPA permits employees to sue their employers for failing to pay wages for all hours worked. VA. CODE ANN. §§ 40.1-29(G), (J) ("[I]f an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action . . . against the employer . . . to recover payment of the wages . . . ."); *see Nelson v. Area Wide Protective, Inc.*, No. 1:21-cv-895, 2021 WL 10352732, at *7 (E.D. Va. Dec. 8, 2021) (finding that plaintiffs could bring an action under the VWPA § 40.1-29(J) for compensation owed after the VWPA amendment became effective on July 1, 2020). Other courts in the Fourth Circuit agree with this reading of the statute. *See, e.g., Lattimore v. Brahmbhatt*, No. 4:21-cv-38, 2024 WL 26687, at *6 n.11 (W.D. Va. Jan. 3, 2024); *Sandoux v. BMC Software, Inc.*, No. 1:21-cv-490, 2022 WL 18108381, at *1–2 (E.D. Va. Mar. 1, 2022).

Defendant relies on *Pallone* and *Mar v. Malveaux*, 732 S.E.2d 733 (Va. Ct. App. 2012), to support its argument that Plaintiffs inappropriately utilize the VWPA as the basis for their claim. (Mem. in Supp. at 7–8.) However, these cases well predate the

9

2020 amendment. Moreover, Defendant's contention that Plaintiffs' unpaid work does not qualify for relief under the VWPA's right of private action because it consists of "off-the-clock" endeavors akin to "driving to work [or] donning and doffing equipment" is without merit. (*See* Reply at 3.) Plaintiffs bring their cause of action for work that falls well within the scope of their duties under their Agreements—namely, treating patients and completing medical documentation and charting. Therefore, Plaintiffs properly raise their claim under the VWPA. Because the VWPA provides Plaintiffs the right to bring this private action against Defendant for unpaid wages, Defendant's motion under Rule 12(b)(6) will be denied.

### B. Dr. Naidu-McCown has standing to sue under the VWPA and Virginia's misclassification statute.

Defendant alleges that Dr. Naidu-McCown lacks standing to sue under Article III because Capital KidMed, not Dr. Naidu-McCown, is the contracting party under the Agreement as amended in March 2020. (Mem. in Supp. at 9–10.) Defendant asserts that Virginia's misclassification statute only provides an "individual" with the right to sue their employer. (*Id.*); *see* VA. CODE ANN. § 40.1-28.7:7. Therefore, although Capital KidMed may have standing to sue pursuant to the Agreement, Defendant contends that Capital KidMed cannot sue under Virginia Code § 40.1-28.7:7 because it is a business entity, not an "individual." (Mem. in Supp. at 9–10.) Defendant also argues that the VWPA only allows an "employee" to bring an action against the alleged employer. (*Id.* at 11–12; Reply at 11–13.) Thus, Capital KidMed, as the contracting party, is the "employee" and Dr. Naidu-McCown has not plausibly alleged an injury-in-fact sufficient

to establish standing. (Mem. in Supp. at 10–12.)

Plaintiffs contend that Defendant "unnecessarily focuses on the written contract" because "[Dr.] Naidu-McCown's claims exist outside of what the contract says." (Resp. in Opp'n at 10.) However, even considering the Agreement, Plaintiffs allege that Dr. Naidu-McCown has standing to sue because she signed and printed her name as "[t]he undersigned Individual [who] acknowledges and accepts the duties and restrictions set forth below." (*Id.* at 11 (quoting Ex. 2 at 1).) Plaintiffs also note that, in Virginia, employment status is determined by the six-factor economic realities test, not the written contract. (*Id.*) Plaintiff asserts that Dr. Naidu-McCown has plausibly alleged that she is an "individual" under Virginia's misclassification statute and that she was an "employee" of TeamHealth as defined by Virginia Code § 40.1-2. (*Id.* at 10–13.) Therefore, as the person who performed duties for TeamHealth in consideration of wages, she asserts that she has standing to sue under the VWPA and Virginia's misclassification statute. (*Id.* at 12–13.)

The Court first addresses whether Dr. Naidu-McCown has standing to sue under the VWPA and Virginia's misclassification statute. Dr. Naidu-McCown asserts that she was injured because she was misclassified as an independent contractor and she was not adequately paid for her services as an ER physician. Specifically, she alleges that she routinely worked unpaid hours in order to treat patients and complete the required medical documentation and charting. (*See* Compl. ¶¶ 3, 30, 34, 44, 46–48.) She also contends that her misclassification resulted in a loss of wages, salary, fringe benefits, and

11

expenses from TeamHealth. (*See id.* ¶¶ 2, 12, 121.) The Court finds these allegations are sufficient to plausibly allege an injury-in-fact and that this injury is causally connected to Defendant's conduct at issue. Although Defendant does not challenge the third element of standing—a likelihood that the injury will be redressed by a favorable decision—the Court finds that this element is met because recovery of damages and an injunction would remedy the injury. *See Lujan*, 540 U.S. 560–61. Dr. Naidu-McCown has met her burden to establish standing.

Additionally, Defendant essentially argues that Dr. Naidu-McCown is not a proper party under the VWPA and Virginia's misclassification statute. In determining whether Dr. Naidu-McCown is an appropriate party under the VWPA, the Court is not bound by the Agreement itself. *See Hill v. Pepperidge Farm*, No. 3:22-cv-97–HEH, 2022 WL 3371321, at *2–3 (E.D. Va. Aug. 16, 2022). Rather, the Court applies the six-factor economic realities test to determine whether a worker is an employee or an independent contractor. *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016); *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). The Court must weigh the following factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*McFeeley*, 825 F.3d at 241 (quoting *Schultz*, 466 F.3d at 304–05). Dr. Naidu-McCown

12

was the actual worker providing services to patients at Chippenham. She has alleged that, although she negotiated her hourly rate, TeamHealth and the client hospital controlled the number of hours or shifts ER physicians work, the number of physicians staffing the ER and who those physicians were, the length of shifts, and the prices of medical services. (*See* Compl. ¶¶ 14, 26, 43.) TeamHealth and HCA also provided Plaintiffs with medical malpractice coverage, mandated the completion of medical documentation and charting for all patients within a specified timeframe, and provided Plaintiffs with equipment and assistants. (*See id.* ¶¶ 25, 27–28, 30, 32.) At this stage, Dr. Naidu-McCown has plausibly alleged that she is an employee of TeamHealth.

Under Virginia's misclassification statute, "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee." VA. CODE ANN. § 40.1-28.7:7(A). "[A]n individual who performs services for a person for remuneration shall be presumed to be an employee of the person that paid such remuneration." *Id.* § 40.1-28.7:7(B). Here, based on the plain language of the statute, Dr. Naidu-McCown is the individual person who performed services for remuneration from TeamHealth. Thus, she has sufficiently alleged that she is an employee under Virginia's misclassification statute.

### C. Capital KidMed is not a necessary and indispensable party to this action.

Defendant contends that Dr. Naidu-McCown's claims should be dismissed for failure to join an indispensable party, namely Capital KidMed, under Rule 12(b)(7). (*See* Mem. in Supp. at 12–13.) Defendant argues that Capital KidMed is a necessary party to

13

this action because it is the contracting party to the Agreement. (*Id.*) Therefore, Defendant asserts that it "cannot secure complete relief" without joinder of Capital KidMed. (Reply at 14.)

Plaintiffs argue that Capital KidMed is not a necessary party to this litigation because they only allege statutory violations, not contractual claims. (Resp. in Opp'n at 15.) However, even under the Agreement, Dr. Naidu-McCown was intended to be the "individual" performing "duties" for TeamHealth. (*Id.* at 11 (quoting Ex. 2 at 1).) They also contend that Capital KidMed would be an improper party because only individuals, not professional corporations, can be "employees" and be misclassified under Virginia Code § 40.1-28.7:7(A). (*Id.* at 16.) Therefore, Dr. Naidu-McCown is the appropriate party because she is the person who performed services for TeamHealth in consideration of wages—thus, she is the "employee" under Virginia Code § 40.1-29 and the "person" under Virginia Code § 40.1-2. (*Id.* at 13, 16.)

The Court must analyze whether Capital KidMed is a necessary party to this litigation. In raising its argument, Defendant relies on various cases in support of the notion that a signatory to a contract is an indispensable party under Rule 19. *See Kayablian*, 948 F.3d at 219–21; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000). However, these cases are distinguishable because the plaintiffs raise breach of contract claims—Plaintiffs do not bring contractual claims before this Court. Plaintiffs only raise violations of the VWPA and Virginia's misclassification statute. *See Nw. Fed. Credit Union v. SBC Fin., LLC*, No. 1:16-cv-

14

1299, 2017 WL 7737324, at *4 (E.D. Va. Jan. 18, 2017) (noting that "[t]he Rule 19 inquiry does not turn on whether every signatory to a contract is joined as a party to the lawsuit"). Thus, an adjudication by this Court will not rise or fall on the Agreement itself. *See Pay Tel Commc'ns v. Lattice Inc.*, No. 2:20-cv-2713, 2020 WL 6048806, at *3–4 (D.S.C. Oct. 9, 2020). Accordingly, Defendant has not met its burden of showing that Capital KidMed is a necessary party. *See Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 92. The Court finds that this is not an appropriate case to employ the drastic remedy of dismissal, and the action should proceed among the existing parties. *See Home Buyers*, 750 F.3d at 433.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motions to Dismiss. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 22, 2024
Richmond, Virginia

15